NIMA FARBOODY (CA BAR NO. 262371)
20255 Corisco St.
Chatsworth, CA 91311
Tel: 818-886-3200
Email: nfarboody@mazalent.com

Attorney for MAZAL GROUP, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAZAL GROUP, LLC, a California limited liability company<br><br>    Plaintiff,<br><br>    vs.<br><br>BILLY ROGER DIMAS, an individual and DOES 1 to 10,<br><br>    Defendants. | Case No.: 2:18-cv-6219-RGK-JEM<br><br>**NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGEMENT AGAINST BILLY ROGER DIMAS; DECLARATION OF SHAWN ODED AND ALLYSON LANGFORD IN SUPPORT THEREOF** |

TO THE COURT AND ALL PARTIES AND THEIR ATTORNEY(S) OF RECORD:

PLEASE TAKE NOTICE THAT on July 1, 2019 at 9AM PST in Courtroom 850 of the Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, CA 90012, the Hon. Judge R. Gary Klausner will hear Plaintiff's motion for default judgement against Defendant Billy Roger Dimas.

This motion is based upon this notice and motion, the attached memorandum of points and authorities, and records and pleadings in this action.

Dated: 5/8/2019                               /s/Nima Farboody
                                              Attorney for the Plaintiff.

## INTRODUCTION

Plaintiff MAZAL GROUP, LLC ("MG") provides notice that it is moving for default judgement against BILLY ROGER DIMAS ("Defendant" or "Billy Dimas"). Default judgement is appropriate pursuant to Federal Rule of Civil Procedure 55(b) because Defendant BILLY ROGER DIMAS has failed to defend himself in this action.

## MEMORANDUM IN SUPPORT

MG brought this suit against Defendant pursuant to a breach of contract claim, inter alia, on July 18, 2018. Defendant's response was due by December 3, 2018. The Clerk of this Court enter default against Defendant pursuant to Federal Rule of Civil Procedure 55(a) on December 14, 2018. Now Plaintiff MG seeks default judgement for the entire amount alleged in the Complaint, <u>one hundred thousand US dollars ($100,000.00)</u>. Default Judgement is appropriate because MG meets the factors identified by the Ninth Circuit in *Eitel v. MCCool* 782 F.2d 1470, 1471-72 (9th Cir. 1986):

> 1) the possibility of prejudice to the plaintiff, 2) the merits of plaintiff's substantive claim, 3) the sufficiency of the complaint, 4) the sum of money at stake in the action, 5) the [possibility of a dispute concerning material facts, 6) whether the default was due to excusable neglect, and 7) the strong policy underlying Federal Rule of Civil Procedure favoring decisions on the merits.

## ARGUMENT

A default judgement is appropriate because of the failure by Defendant BILLY ROGER DIMAS to appear and offer a defense. On this motion, the allegations by Plaintiff MG are to be taken as true. *Geddes v. United Fin. Grp,* 559F.2d 557, 560 (9th Cir. 1977). Plaintiff will not seek to enforce its cause of action for fraud (Complaint

Motion for Default Judgement
2

cause of action #3, *See* Complaint Dkt #1) and therefore dismisses the fraud cause of action. For the proposes of this default judgement motion, Plaintiff seeks only enforcement of the breach of contract cause of action. The only fact to be resolved is the amount of liability the Defendant has, an issue which is resolved by examining the exhibit of the Complaint listing liquidated damages as one-hundred thousand US dollars ($100,000.00). *See* Complaint Dkt. #1 Exhibit A "Agreement" Section 8.03.

1. <u>Plaintiff Will be Prejudiced Absent Entry of Default Judgment</u>

Default judgment is the sole avenue for Plaintiff in the instant case because the defendant has failed to answer or respond to the Complaint. Without default judgment, Plaintiff will be prejudiced because it will be without other recourse for recovery. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (finding plaintiff would suffer prejudice without entry of default judgment because they would likely be without other recourse for recovery).

2. <u>Plaintiff Mazal Has Alleged and Proven Meritorious Claims Against Defendant</u>

The second of the *Eitel* factors directs the Court to evaluate the merits of the plaintiff's claims and the Complaint. *PepsiCo*, 238 F. Supp. 2d at 1175. The Complaint properly alleges the elements for all causes of action against Defendant BILLY ROGER DIMAS. Moreover, the Complaint's factual allegations, taken as true because of the default, along with the evidence supplied by Plaintiff, demonstrate the merits of Plaintiff's claims.

For a contract to be valid, it requires 1) offer and acceptance, 2) consideration and a 3) meeting of minds.  The Agreement (See Exhibit A) offers the licensee a license to use certain intellectual property (*See* Exhibit A Section 4) as well as the right to sell (*See* Exhibit A Section 1) Brand Products, in exchange the licensee will purchase Brand Products from MG. Here we see the offer and acceptance, (*See* Exhibit A Recitals C and D), the consideration (*See* Exhibit A Section 1 and 4) and the mutual

assent/meeting of minds (*See* Exhibit A Signature Page). Therefore, the Agreement is valid. The causes of action are alleged in proper detail. 1) DEFENDANT signed a valid contract attached as to the Complaint and hereto as Exhibit A 2) DEFENDANT sold in such volume and to such sellers that it was undeniable that he intentionally violated sales channels of the contract (See Complaint Dkt. #1 ¶14-17 and Exhibit A Section 1.03, 8 et seq. 3) that breach was material (See Complaint Dkt #1 ¶21 and Exhibit A Section 8.02 et seq. 4) that breach did harm to Plaintiff by virtue of disrupting their sales/distribution network and destabilizing prices. (*See* Complaint DK#1 ¶17-19 and ¶22.)

The breach itself was recorded and observed by Mazal Group's license enforcement department and the details are attested to in the Declaration of Allyson Langford (attached as Exhibit C). Defendant BILLY ROGER DIMAS was repeatedly caught in violation, repeatedly he lied. His sales were to professional online sellers, not merely clients and such sales did harm to Plaintiff's business. *See* Exhibit C. The lie itself is a material breach of the Agreement. *See* Exhibit A Section 8.02.1. *Also See* Complaint Dkt #1 ¶21.

3. Complaint is Sufficient.

For the proposes of this default judgement motion, Plaintiff seeks only enforcement of the breach of contract cause of action.  In the allegation of breach of contract, Plaintiff states the contract is valid because the was an offer and acceptance (See Recitals C and D Exhibit A), consideration (See Section 1 and 4 Exhibit A) and mutual accent (See signature page Exhibit A). The Complaint alleges breach by Defendant (Complaint Dkt. #1 ¶21-22) and damages suffered by Plaintiff (See Complaint Dk# 1 ¶23.)  Jurisdiction is provided by the agreement signed by the parties and is proper in this Court (See Complaint Dk #1 ¶2, also see Exhibit A Sections 8.04

and Section 13.) The amount in controversy exceeds the minimum for diversity jurisdiction and the Defendant was served out of state.

The Declaration of Allyson Langford goes into further detail about the incident leading to the discovery of Defendant's most recent breach, but the Complaint sufficiently states that the breach is alleged because online retailers were professional retailers, not merely customers, and were in sufficient numbers to conclude that the Defendant had purposefully breached the Agreement, and that the Defendant lied to Plaintiff in the Agreement and during those negotiations for such agreement in violation of Section 8.02.1 of the Agreement. (Complaint Dkt. #1 ¶21-22). Not only is this breach clearly intentioned and purposeful but also, considering these resellers are consistently selling our products without authorization, appear to be part of some sort of organized effort.

The instant case involves a relatively simple breach of contract. The Complaint alleges the validity of the Agreement, the breach of that Agreement, the harm it did to Plaintiff, the liquidated damages, and the Jurisdiction. For those reasons the Court should find that the Complaint is sufficiently plead in the instant matter.

4. Sum of Money at Stake

The sum of money at stake is one hundred thousand US dollars ($100,000.00.) This sum was agreed by Defendant and separately initialed in fact. (See Complaint Dkt. #1 Prayer for Relief pg 6, also see Exhibit A Section 8.03 et seq.) Defendant knew, at every moment, what the price would be if he breached, he knew the breach was material (*See* Exhibit A Section 8.02) and he did it anyways. Defendant specifically agreed to the reasonableness of such damages and initialed on section (*See* Exhibit A Section 8.03). He was aware, he was informed, he breached the contract anyways, hoping to unload products for fast cash at the expense of Plaintiff's price structing and distribution/sales network. Pursuant to Cal. Civ. Code Section 1671(b)

"Except as provided in subdivision (c), a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." Subdivision (c) deals with rules regarding liquidated damages for retail purchases or real property leases.

In the instant matter, the Agreement is by and between two business parties, not retail or real estate. While subdivision (d) of Cal. Civ. Code Section 1671 is very restrictive of liquidated damages, subdivision (b) "give the parties considerable leeway in determining the damages for breach." (*Weber, Lipshie & Co. v. Christian* (1997) 52 Cal.App.4th 645, 654 [60 Cal.Rptr.2d 677].) Since on of the principal causes of damage to Plaintiff is due to the disturbance of their distribution channels, hurting seller relations, diminishing consumer Brand confidence, and harming price management structures of Plaintiff (*See* Complaint Dk #1 ¶22.), actual damages would be impractical to measure. Given the impractical nature of measuring such damages, we are left to apply liquidated damages to ascertain a reasonable figure, which the licensee, and Billy Dimas in particular, has agreed is both reasonable and understandable considering the uncertainty of measurement and is at present not seeking to invalidate.

a) <u>Reasonable Relation of Liquidated Damages to Actual Damages</u>

As part of Mazal Group's estimation of liquidated damages, Mazal Group factors in rough expected sales of products in a year (See Exhibit B Decl of Shawn Oded, Executive Director of Mazal Group LLC).) lost due to a breach of this nature. In addition, it is contemplated at the time of the formation of these license agreements, that the average online reseller typically sells roughly one hundred to two hundred units of a product with an MSRP of five hundred ($500.00) to one thousand US dollars ($1,000.00) per unit. Defendant Billy Dimas's inventory was associated (via serial number tracing conducted by Mazal's license enforcement department)(See Exhibit C)

Motion for Default Judgement
6

with no less than three online large professional retailers. Defendant Billy Dimas purchased over two hundred units of Vine Vera® Non-Surgical Syringes™ and two hundred of Vine Vera® Day Creams. His inventory has been traced to three large scale professional online sellers (on eBay and Amazon), each selling the Syringe and Day Cream above, from Billy Dimas. Each such unit represents a lost sale on the brands respective corporate website, at an MSRP of nine-hundred and ninety-five dollars ($995.00) per unit of Syringe and one hundred and forty-six ($146.00) of the Day Cream. (*See Id*). This represents a total of over two hundred and thirty thousand dollars ($230,000.00) of lost gross sales. It is important to state that this is not the actual damages, as it is impossible to know the actual damages, as they involve damage to Brand identity, damaged relations to other wholesale clients, damages to intellectual property, and the extent of the pervasiveness of the online sales are unknown. The figure above is not meant to be reflective of damages speculated at the formation of the license agreement attached as Exhibit A.

5. <u>There is No Possibility of the Dispute of the Facts</u>

There is no possibility of dispute as to any material facts in the case. Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d at 917-18. Therefore, no genuine dispute of material facts would preclude granting Plaintiffs' motion. PepsiCo at 1177. Damages are provided for in Section 8.03 of the Agreement.

6. <u>There Exists No Excusable Neglect.</u>

Defendant was properly served by substituted service on November 2, 2018. Since that time, Plaintiff has been in contact with Defendant via telephone. Defendant is well aware of the suit and has made no actions in that regard. Here we are several months from the initial service and no response.

### 7. Though There is a Strong Policy to Decide a Case on the Merits, That is Not Sufficient Here to Deny Judgment.

Cases should be decided upon their merits whenever reasonably possible. *Eitel*, 728 F.2d at 1472.  However, that alone is not dispositive. PepsiCo at 1177. Defendant's failure to answer the Plaintiff makes deciding on the merits essentially impossible. Id.

### III. Waivers and Dismissals

Plaintiff waives recovery of attorney's fees and costs of suit. If the Court sees fit to grant this motion, Plaintiff waives all other causes of action that are not First Cause of Action, breach of contract, and recovery therein.  If the Court sees fit to grant this motion, Plaintiff dismisses all DOE Defendants.

### IV. Conclusion

For the foregoing reasons, Defendant BILLY ROGER DIMAS, an individual, ought to have judgment entered against him in the amount of one hundred thousand US dollars per Section 8.03 of the agreement ($100,000.00).

Dated:  05/08/2019                                         By____/s/Nima Farboody_____
                                                                            NIMA FARBOODY
                                                                            Attorney for Plaintiff
                                                                            MAZAL GROUP, LLC

## Declaration of Nima Farboody

I, Nima Farboody, declare as follows:

1. I represent the Plaintiff, Mazal Group, LLC, in this action. If called as a witness, I could and would competently testify thereto.
2. Defendant BILLY ROGER DIMAS was served with the summons and complaint, the subject of this lawsuit, pursuant to Rule 4 of the Federal Rule of Civil Procedure, on November 2, 2018.
3. Defendant BILLY ROGER DIMAS failed to respond to the complaint or appear in any manner in this Court.
4. Default was entered against Defendant BILLY ROGER DIMAS on December 14, 2018.
5. Defendant BILLY ROGER DIMAS is not a minor or an incompetent person.
6. Defendant BILLY ROGER DIMAS is not in conservatorship, nor does he have a general guardian, committee, or other representative.
7. Defendant BILLY ROGER DIMAS is not currently in military service, and therefore the Servicemembers Civil Relief Act does not apply.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 8, 2019 in Chatsworth, California.

By_____/s/Nima Farboody, Esq._____
NIMA FARBOODY.
Attorney for Plaintiff Mazal Group, LLC

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My work address is 20255 Corisco St. Chatsworth, CA 91311.

On 8th day of May, 2019, I served the following document described as ***Motion for Default Judgement*** on all interested parties in this action by placing [X] a true copy [ ] the original thereof enclosed in sealed envelopes addressed as follows:

>Billy Roger Dimas
>601 NE 23rd St., PH 6
>Miami Florida 33137-5061

[ ]   (BY FACSIMILE) The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine. Pursuant to Rule 2008(e)(4), I caused the machine to print a record of the transaction.
[ ]   (BY ELECTRONIC SERVICE 1010.6 C.C.P.)
[X]   (BY MAIL, 1013a, 2015.5 C.C.P.)
  [X]   I deposited such envelope in the mail at Chatsworth, California. The envelope was mailed with postage thereon fully prepaid.
  [ ]   I am readily familiar with the firm's practice for collection and processing correspondence for mailing. Under that practice, this document will be deposited with the U.S. Postal Service on this date with postage thereon fully prepaid at Corona, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]   (BY PERSONAL SERVICE) I caused the foregoing envelope to be delivered by hand to the offices of the addressee.

[X]   (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.
[ ]   (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on 8th day of May 2019 at Chatsworth, California.

_____/s/Nima Farboody_____
   Nima Farboody